## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | **No. 08-20033-01-KHV** |
| NORMAN E. ELMER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

On February 27, 2008, a grand jury indicted defendant for failing to update a registration under the Sex Offender Registration and Notification Act in violation of 18 U.S.C. § 2250.  See Indictment (Doc. #1).  This matter is before the Court on defendant's Motion To Dismiss (Doc. #16) filed May 22, 2008.  For reasons stated below, defendant's motion is overruled.

### Factual Background

On October 30, 1981, in the Superior Court of Yolo County, California, defendant was convicted of violating California Penal Code Section 288A(c), which prohibited oral copulation with a child under the age of 14 and forcible oral copulation against a victim's will.  On August 8, 1991, at the Mule Creek State Prison in Ione, California, defendant signed a form called "Notice Of Registration Requirement," which acknowledged that he had received notice of his duty to register as a convicted sex offender pursuant to Section 290 of the California Penal Code.  See Exhibit 1 to Government's Response (Doc. #22).  Defendant also acknowledged that his responsibility to register was a lifetime requirement, that he had to register within 14 days of entering any city or county in which he was domiciled and that within ten days of changing his residence, he had to inform the law enforcement agency with which he last registered.  See id.

On February 12, 2007, defendant was arrested on a warrant at his residence in Utica, New York.  While in custody, defendant signed a "Sex Offender Periodic Address Verification Form" which noted that he had a duty to inform New York authorities in writing of any intended address change ten days prior to moving.  See Exhibit 3 to Government's Response (Doc. #22).  On March 8, 2007, New York authorities registered defendant as a sex offender.  Defendant's landlord verified that defendant lived in Utica, New York until he moved some time in June of 2007.[1]  See Exhibit 4 to Government's Response (Doc. #22).[2]

On January 2, 2008, defendant received a Kansas driver's license which listed his address as 101 S. Fourth Street, Bldg. 160, Leavenworth, Kansas.  Law enforcement officers later discovered that defendant was residing at 1611 Eleventh Street in Leavenworth, Kansas.  On February 27, 2008, a grand jury indicted defendant for failing to update a registration in violation of 18 U.S.C. § 2250.  On February 28, 2008, law enforcement officers arrested defendant.

## Analysis

Title I of the Adam Walsh Child Protection and Safety Act of 2006 (Pub. L. 109-248), the Sex Offender Registration and Notification Act ("SORNA"), created a national system for registration of sex offenders.  SORNA was enacted on July 27, 2006.  SORNA includes two primary

---

[1]     The registration form indicates that defendant was convicted of oral copulation with a child under the age of 14.  Defendant argues that his crime did not involve a child under the age of 14.  Even so, defendant does not dispute that he was convicted of violating California Penal Code Section 288A(c), which at the time, also prohibited forcible oral copulation against a victim's will.  Defendant does not dispute that based on his offense, he was required to register as a sex offender under California law.

[2]     At a hearing on July 27, 2007, a New York state judge ruled that defendant was a sex offender subject to registration.  See Defendant's Exhibit 402.  Defendant was not present at the hearing.  See id.

provisions which are at issue in this case: (1) a federal registration requirement for sex offenders, 42 U.S.C. § 16913, and (2) a criminal provision which penalizes a sex offender's failure to register or update a registration, 18 U.S.C. § 2250.

The registration requirement of SORNA, Section 16913, provides as follows:

(a) In general
A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

(b) Initial registration
The sex offender shall initially register--
    (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
    (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.

(c) Keeping the registration current
A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

(d) Initial registration of sex offenders unable to comply with subsection (b) of this section
The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

(e) State penalty for failure to comply
Each jurisdiction, other than a Federally recognized Indian tribe, shall provide a criminal penalty that includes a maximum term of imprisonment that is greater than

1 year for the failure of a sex offender to comply with the requirements of this subchapter.

42 U.S.C. § 16913.

On February 28, 2007, pursuant to Section 16913(d), the Attorney General issued an interim rule – effective that date – which states in pertinent part as follows:

[T]he requirements of [SORNA] apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to enactment of that Act.

28 C.F.R. § 72.3.[3]

SORNA also provides a criminal penalty for anyone who is required to register under the Act, travels in interstate or foreign commerce and knowingly fails to register or update a registration. See 18 U.S.C. § 2250(a).

Defendant asks the Court to dismiss the indictment. Defendant argues that (1) Section 2250 is invalid because Congress lacks authority under the Commerce Clause to criminalize a local sex offender's failure to register in a state-created registry; (2) SORNA's registration requirements are invalid because Congress lacks authority under the Commerce Clause to force citizens who have been convicted under state law to register as sex offenders; (3) as applied to his travel before February 28, 2007 (when the Attorney General issued the interim rule), SORNA violates the ex post facto clause; (4) Section 2250 was not made retroactive to offenses which occurred before its effective date and even if it is retroactive, defendant's prosecution violates the ex post facto clause;

---

[3]       The Attorney General later set forth detailed proposed guidelines which were subject to notice and comment. See National Guidelines For Sex Offender Registration And Notification, 72 Fed. Reg. 30210 (May 30, 2007). The Attorney General recently issued final regulations on SORNA which were effective July 2, 2008. See National Guidelines For Sex Offender Registration And Notification, 73 Fed. Reg. 38030 (July 2, 2008).

(5) the Attorney General's regulation is invalid because it was issued without a notice and comment period in violation of the Administrative Procedures Act; (6) SORNA violates the non-delegation doctrine because Congress attempted to delegate to the Attorney General the power to determine the retroactivity of the registration requirements; (7) defendant's prosecution under Section 2250 violates his right to due process because he did not receive notice of SORNA's requirements when he was convicted of the underlying offense, it is impossible for him to comply with SORNA because Kansas has not adopted a SORNA-compliant registry and he could not "knowingly" violate SORNA because no state has adopted a SORNA-compliant registry; (8) Section 2250 violates the Tenth Amendment because it forces state officials to enforce a federal regulatory scheme; and (9) as applied, SORNA infringes on defendant's constitutional right to travel.

## I.   Congressional Authority To Criminalize Failure To Register In State-Run Registry

To sustain a conviction under Section 2250, the government must establish that defendant (1) was required to register under SORNA; (2) traveled in interstate or foreign commerce, or entered or left or resided in Indian country;[4] and (3) knowingly failed to register or update a registration required by SORNA.  18 U.S.C. § 2250(a).  Defendant argues that Section 2250 is invalid because Congress lacks authority under the Commerce Clause to criminalize a local sex offender's failure to register in a state-created registry.  The Court construes defendant's argument as a facial challenge to Section 2250.[5]

---

[4]      The second element can also be satisfied by showing that the sex offender was required to register because of a conviction under federal law.  See 18 U.S.C. § 2250(a)(1)(A).  Because defendant was convicted under state law, the Court does not address this alternative element.

[5]      Defendant cannot assert an "as applied" challenge based on the Commerce Clause
(continued...)

Statutes are presumed constitutional.  United States v. Morrison, 529 U.S. 598, 608 (2000). To sustain a facial challenge to the constitutionality of a statute, a litigant must satisfy the heavy burden of showing that "no set of circumstances exists under which the Act would be valid."  Kraft Gen. Foods, Inc. v. Ia. Dept. of Revenue & Fin., 505 U.S. 71, 82-83 (1992) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)).

Article I, Section 8 of the United States Constitution provides that "The Congress shall have the Power . . .  To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const. Art. I, § 8, cls. 1 & 3.  Under the Commerce Clause, Congress may regulate three categories of activities: (1) the channels of interstate commerce; (2) the instrumentalities of interstate commerce, and persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) activities that "substantially affect" interstate commerce.  United States v. Lopez, 514 U.S. 549, 558-59 (1995).[6]

Under the first prong of Lopez, Section 2250 is valid because it regulates "the use of the channels of interstate commerce."  To sustain a SORNA conviction, the government must prove that defendant traveled in interstate or foreign commerce.  To travel from one state to another, defendant obviously used the channels of interstate commerce.  Congress may forbid or punish use of interstate commerce as an agency to promote immorality, dishonesty or the spread of any evil or harm to the people of other states from the state of origin.  United States v. May, 535 F.3d 912, 2008 WL

---

[5](...continued)
because the indictment alleges that he traveled in interstate or foreign commerce.  See United States v. Van Buren, No. 08-CR-198, 2008 WL 3414012, at *9 n.11 (N.D.N.Y. Aug. 8, 2008).

[6]      In Lopez, the Supreme Court held that under the third prong, a federal statute criminalizing firearm possession in school zones was not supported by the Commerce Clause because it did not "substantially affect" interstate commerce.  Id.

2917766, at *8-9 (8th Cir. July 31, 2008) (citing Brooks v. United States, 267 U.S. 432, 436 (1925)). Because Section 2250 regulates the use of the channels of interstate commerce, it is a valid exercise of congressional power under the Commerce Clause.  See May, 2008 WL 2917766, at *8-9; Van Buren, 2008 WL 3414012, at *12; United States v. Trent, No. 07-cr-196, 2008 WL 2897089, at *4 (S.D. Ohio July 24, 2008).

Section 2250 also is a valid exercise of Congressional power under the second prong of Lopez because it regulates persons in interstate commerce.  Congress may regulate "persons . . . in interstate commerce, even though the threat may come only from intrastate activities."  Lopez, 514 U.S. at 558.  Unlike the statute in Lopez, which prohibited possession of a firearm in a school zone, Section 2250 specifically requires that the individual must travel in interstate or foreign commerce. See United States v. Hann, No. 08-00002, 2008 WL 4067542, at *4 (M.D. Tenn. Aug. 22, 2008); United States v. Gould, 526 F. Supp.2d 538, 547 (D. Md. 2007) (statute focuses on registration of persons in interstate travel); United States v. David, No. 08-CR-11, 2008 WL 2045830 at *8 n.11 (W.D.N.C. May 12, 2008).

Defendant argues that the second prong of Lopez does not apply because Section 2250 does not require that the movement between states be connected to an individual's failure to register.  The crime of failing to register as a sex offender and traveling to a different state, as defined in Section 2250, however, has a minimal nexus with interstate commerce.  United States v. Senogles, No. 08-117, 2008 WL 2971447, at *8 (D. Minn. Aug. 4, 2008); United States v. Mason, No. 07-cr-52-Orl-19GJK, 2008 WL 1882255, at *3 (M.D. Fla. Apr. 24, 2008).  Section 2250 addresses the danger of having convicted sex offenders disappear "off the radar screen" by moving across jurisdictional boundaries such as state lines.  Mason, 2008 WL 1882255, at *3; see United States

- 7 -

v. Shenandoah, Nos. 07-CR-0500, 08-CR-0196, 2008 WL 3854454, at *5 (M.D. Pa. Aug. 20, 2008) (threat posed by sex offenders traveling in interstate commerce is type of peril Congress may address utilizing Commerce Clause); United States v. Ditomasso, 552 F. Supp.2d 233, 239 (D.R.I. 2008) (SORNA prevents sex offenders from falling through cracks between state regulations); United States v. Gillette, 553 F. Supp.2d 524, 530 (D.V.I. 2008) (quoting SORNA fact sheet which emphasized that bill would integrate information in State sex offender registry systems and ensure law enforcement has access to same information across United States, helping prevent sex offenders from evading detection by moving from state to state), 42 U.S.C. § 16901 (intent to protect public from sex offenders and listing 17 instances where children were abducted and murdered). Section 2250 regulates persons in interstate commerce and therefore is a valid exercise of Congressional power under the Commerce Clause. See May, 2008 WL 2917766, at *8-9; United States v. Robinson, No. CR 108-021, 2008 WL 4086474, at *5 (S.D. Ga. Sept. 2, 2008); Shenandoah, 2008 WL 3854454, at *5; United States v. Thomas, 534 F. Supp.2d 912, 918 (N.D. Iowa 2008).[7]

## II.    Congressional Authority To Require Registration For State Law Sex Offenses

Defendant argues that the government cannot establish the first element of a Section 2250 violation, i.e. that he was required to register under SORNA, because under the Commerce Clause,

---

[7]    Defendant maintains that upholding Section 2250 under the second prong of Lopez would allow Congress to federalize every local criminal offense simply by making it a crime for someone who committed a local offense to travel in interstate commerce at some point in his life. As explained above, Section 2250 is directed at sex offenders dropping off the radar screen by traveling across state lines and effectively thwarting the tracking systems set up by individual states. Because Section 2250 addresses a potential loophole in local tracking systems which is created when offenders travel in interstate commerce, the Court declines to address defendant's hypothetical as to purely local offenses which are followed by travel in interstate commerce.

Congress cannot impose registration requirements on individual citizens who are convicted of purely intrastate offenses.   The Court construes defendant's argument as a facial challenge to Section 16913.  As noted above, to sustain a facial challenge to the constitutionality of a statute, a litigant must satisfy the heavy burden of showing that "no set of circumstances exists under which the Act would be valid."  Kraft, 505 U.S. at 82-83 (quoting Salerno, 481 U.S. at 745).

Defendant argues that under Section 16913, the registration provision, Congress cannot require individuals who are convicted of purely state law offenses to register under SORNA. Defendant is charged, however, with violating Section 2250 which requires proof that he traveled in interstate commerce (or that his prior conviction is a federal offense).  As explained above, Congress had ample authority under the Commerce Clause to criminalize the specified conduct in Section 2250.[8]

_____

[8]        Several courts have held that Section 16913 is invalid as beyond the authority proscribed by the Commerce Clause.  See United States v. Waybright, 561 F. Supp.2d 1154, 1162-68 (D. Mont. 2008); United States v. Powers, 544 F. Supp.2d 1331, 1333-36 (M.D. Fla. 2008); Thomas, 534 F. Supp.2d at 917-22.  Each of these courts conducted a separate analysis of the registration provision (Section 16913) and the criminal penalty provision (Section 2250) of SORNA. The Court rejects this approach because defendant is only charged with a violation of Section 2250. See Shenandoah, 2008 WL 3854454, at *5 n.7; Senogles, 2008 WL 2971447, at *10; see also Van Buren, 2008 WL 3414012, at *13 (Section 16913 and Section 2250 are interrelated such that a facial challenge to one cannot be resolved without resort to the other and the entire statute).   Both Section 16913 and Section 2250 are components of a "symbiotic statutory scheme" in which no criminal penalty arises unless a sex offender fails to register and, conversely, a sex offender's failure to register cannot be enforced without a criminal penalty.  Shenandoah, 2008 WL 3854454, at *5 n.7 (citation omitted); see Hann, 2008 WL 4067542, at *6 (Section 16913 and Section 2250 should be treated as interrelated components of SORNA); Van Buren, 2008 WL 3414012, at *12.  SORNA does not punish sex offenders for the intrastate failure to register.  Instead, SORNA imposes a criminal penalty when an individual who is required to register under SORNA travels in interstate commerce.  Id.; United States v. Hinen, 487 F. Supp.2d 747, 757-58 (W.D. Va. 2007).
        Even if the Court separately addressed Section 16913, the Court would uphold that provision under the Necessary and Proper Clause, which grants Congress the power to "make all Laws which shall be necessary and proper" for executing its other enumerated powers. U.S. Const. art. I, § 8,
(continued...)

### III.   Retroactivity Of Section 2250 And Ex Post Facto Clause

Defendant argues that although Congress attempted to delegate to the Attorney General the right to specify the applicability of SORNA registration requirements to individuals who were convicted before the effective date of the Act, Congress did not include a similar delegation of power for the criminal provision of Section 2250 and therefore the Attorney General's attempt to apply that section retroactively is invalid.   In a related argument, defendant maintains that Section 2250 violates the ex post facto clause because SORNA was not in effect at the time of his initial conviction in 1981.  Neither argument has merit because Section 2250 works prospectively. Section 2250 creates a new punishment for a new offense – failing to register as a sex offender. Shenandoah, 2008 WL 3854454, at *3.  Section 2250 does not punish an individual for being convicted of a sex crime.  See May, 2008 WL 2917766, at *7.  Instead, it punishes an individual who is defined as a sex offender for traveling in interstate commerce and failing to register.  See id.; Shenandoah, 2008 WL 3854454, at *3; see also United States v. LeTourneau, 534 F. Supp.2d 718, 720-22 (S.D. Tex. 2008) (SORNA does not punish defendant for sexual offense committed prior to enactment of SORNA, but rather traveling in interstate commerce and failing to register after SORNA became effective); United States v. Kent, No. 07-0226, 2007 WL 2746773, at *1-2 (S.D. Ala. Sept. 20, 2007) (to avoid prohibition of retroactive punishment, defendant must travel in interstate commerce and fail to register after 18 U.S.C. § 2250 became effective); cf. Smith v. Doe, 538 U.S. 84, 101-02 (2003) (sex offender who fails to comply with reporting requirement subject to criminal prosecution for that failure, but any prosecution is proceeding separate from individual's

---

[8](...continued)
cl. 18; United States v. Torres, No. 08-1697-KC, 2008 WL 3974307, at *10-11 (W.D. Tex. Aug. 21, 2008); Shenandoah, 2008 WL 3854454, at *5 n.7; Thomas, 534 F. Supp.2d at 921-22.

original offense).[9]

**IV.    Ex Post Facto Clause – Travel Before February 28, 2007**

The ex post facto clause forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981); see U.S. Const., Article 1, § 9.  Defendant argues that the government cannot punish him for travel activities prior to February 28, 2007 when the Attorney General issued the regulation which made SORNA retroactive.  See Motion To Dismiss (Doc. #16) at 21-22.  The Court rejects defendant's argument because as explained above, Section 2250 works prospectively – it creates a new punishment for a new offense, that is traveling in interstate commerce and failing to register as a sex offender. Accordingly, any travel in interstate commerce after the effective date of SORNA (July 26, 2006) is covered by the express language of Section 2250.  The Court therefore overrules defendant's ex post facto argument as to travel before February 28, 2007.[10]

**V.    Validity Of Attorney General Regulation**

Defendant argues that the interim regulation of the Attorney General is invalid because the Attorney General issued the regulation without an opportunity for notice and comment.  Under Section 16913(d), which is titled "initial registration of sex offenders unable to comply with subsection (b) of this section," Congress delegated to the Attorney General "the authority to specify

---

[9]    Defendant argues that SORNA increases the punishment for failing to register from a misdemeanor to a felony which carries a 10 year statutory maximum.  As explained above, because Section 2250 applies prospectively, no ex post facto issue arises from the increased punishment.

[10]    In addition, the Court notes that the government relies on evidence that defendant's landlord verified that defendant lived in Utica, New York until he moved sometime in June of 2007. See Exhibit 4 to Government's Response (Doc. #22).  In February of 2008, law enforcement officers arrested defendant in Kansas.  Because the government does not rely on defendant's interstate travel before February 28, 2007, the Court overrules defendant's argument for this additional reason.

the applicability of the requirements of this subchapter to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." 42 U.S.C. § 16913(d).  Defendant does not explain how this statutory provision applies to him.  On August 8, 1991, at the Mule Creek State Prison in Ione, California, defendant registered as a sex offender.  See 42 U.S.C. § 16913(b)(1).  Because defendant had already initially registered as a sex offender under state law when SORNA was enacted, subsection (d) of Section 16913 did not apply to him.  Defendant was required to keep his registration current under subsections (a) and (c).  Defendant is charged under the congressionally-defined crime in Section 2250 and in particular for failing to update his registration.  The Attorney General's interim rule as to initial registrations simply does not apply to defendant.[11]  See May, 2008 WL 2917766, at *5; United States v. Gagnon, No. 08-cr-52-P-S, 2008 WL 3523181, at *3-4 (D. Me. Aug. 11, 2008); United States v. Beasley, No. 07-CR-115-TCB, 2007 WL 3489999, at *6 (N.D. Ga. Oct. 10, 2007).  Defendant therefore does not have standing to challenge the rule.  See Waybright,

---

[11]  The Court recognizes that the Attorney General opined that the entire statute applied to individuals who were convicted of sex offenses before the effective date of SORNA.  The Attorney General explained, however, that he did not believe that a rule was necessary to confirm that SORNA applied to defendants who had been convicted before SORNA was enacted and who had already initially registered under the Act.  See 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007).  The Attorney General only promulgated the rule as a precautionary measure to foreclose such claims by "making it indisputably clear that SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted."  Id.; see May, 2008 WL 2917766, at *5.  In any event, Congress certainly intended for SORNA to apply to sex offenders who were convicted before the effective date of the act.  SORNA defines a "sex offender" as "an individual who *was* convicted of a sex offense."  42 U.S.C. § 16911(1) (emphasis added).  In addition, both in SORNA and its legislative history, Congress expressed concern about the lack of a tracking system of the thousands of individuals who had been convicted of sex offenses.  It would be illogical for Congress to express concern that thousands of sex offenders who were required to register under state law were evading those registration requirements, yet exempt those same offenders from a federal requirement of registering pending additional rule-making by the Attorney General.  Hinen, 487 F. Supp.2d at 753; see United States v. Zuniga, No. 07CR3156, 2008 WL 2184118, at *12 (D. Neb. May 23, 2008).

561 F. Supp.2d at 1172; United States v. Cardenas, No. 07-80108-CR, 2007 WL 4245913, at *13 (S.D. Fla. Nov. 29, 2007).

Even if defendant had standing to challenge the validity of the Attorney General's interim rule, the Court would nevertheless uphold the regulation.  Section 553 of the Administrative Procedures Act ("APA") ordinarily requires an agency to provide advanced publication of proposed rules, opportunity for public participation in the rule-making process and publication of the final rule, including a concise statement of its basis and purpose, 30 days before its effective date.  5 U.S.C. § 553(b)-(d).  The APA recognizes an exception to the requirement of advance publication and opportunity for public participation "when the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public [comment] thereon are impracticable, unnecessary or contrary to the public interest."  5 U.S.C. § 553(b)(3)(B).  Final publication 30 days in advance of the effective date is not necessary "for good cause found and published with the rule."  5 U.S.C. § 553(d)(3).

Here, the Attorney General found good cause that notice and public comment was contrary to the public interest.  In particular, the Attorney General noted as follows:

> The implementation of this rule as an interim rule, with provisions for post-promulgation public comments, is based on the "good cause" exceptions found at 5 U.S.C. 553(b)(3)(B) and (d)(3), for circumstances in which "notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. 553(b)(3)(B).

> The rule specifies that the requirements of the Sex Offender Registration and Notification Act apply to all sex offenders (as defined in that Act), including those convicted of the offense for which registration is required prior to the enactment of the Act.  The applicability of the Act's requirements promotes the effective tracking of sex offenders following their release, by means described in sections 112-17 and 119 of the Act, and the availability of information concerning their identities and locations to law enforcement and members of the public, by means described in sections 118 and 121 of the Act.

The immediate effectiveness of this rule is necessary to eliminate any possible uncertainty about the applicability of the Act's requirements--and related means of enforcement, including criminal liability under 18 U.S.C. 2250 for sex offenders who knowingly fail to register as required--to sex offenders whose predicate convictions predate the enactment of SORNA.  Delay in the implementation of this rule would impede the effective registration of such sex offenders and would impair immediate efforts to protect the public from sex offenders who fail to register through prosecution and the imposition of criminal sanctions.  The resulting practical dangers include the commission of additional sexual assaults and child sexual abuse or exploitation offenses by sex offenders that could have been prevented had local authorities and the community been aware of their presence, in addition to greater difficulty in apprehending perpetrators who have not been registered and tracked as provided by SORNA.  This would thwart the legislative objective of "protect[ing] the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders," SORNA § 102, because a substantial class of sex offenders could evade the Act's registration requirements and enforcement mechanisms during the pendency of a proposed rule and delay in the effectiveness of a final rule.

It would accordingly be contrary to the public interest to adopt this rule with the prior notice and comment period normally required under 5 U.S.C. 553(b) or with the delayed effective date normally required under 5 U.S.C. 553(d).

72 Fed. Reg. at 8896-97.

The Attorney General's finding that delay in implementing the regulation would thwart the legislative objective of protecting the public from sex offenders because a substantial class of sex offenders could evade the Act is sufficient to meet his burden of demonstrating good cause for issuing the interim rule without the required notice and comment.  See Torres, 2008 WL 3974307, at *21; Shenadoah, 2008 WL 3854454, at *16; United States v. Cochran, No. CR-08-18-RAW, 2008 WL 2185427, at *2 (E.D. Okla. May 23, 2008); see also N. Am. Coal Corp. v. Dir., Office of Workers' Comp., 854 F.2d 386, 389 (10th Cir. 1988) (good cause shown where delay would cause miners to suffer financial and other hardships from loss or delay of medical benefits); N. Arapahoe Tribe v. Hodel, 808 F.2d 741 (10th Cir. 1987) ("good cause" exception is essentially emergency procedure and is important safety valve to be used where delay would do real harm).  For these

reasons, the Court overrules defendant's argument under the APA.

## VI.     Non-Delegation Doctrine

Defendant argues that Section 16913(d) is an improper delegation of power to the Attorney General.  As explained above, defendant has not shown that this statutory provision (or the Attorney General's regulation which interprets it) applies to him.  In particular, defendant has not shown that he is a person who was unable to register under Section 16913(b).  Indeed, the record reflects that defendant registered under both California and New York law.  See Exhibits 1 and 4 to Government's Response (Doc. #22).  Accordingly, defendant does not have standing to challenge the congressional delegation of power in Section 16913(d).  See May, 2008 WL 2917766, at *7; Torres; 2008 WL 3974307, at *19; Zuniga, 2008 WL 2184118, at *12.[12]

## VII.    Due Process / Impossibility

Defendant argues that in violation of the due process clause of the Fifth Amendment, he did not receive adequate notice that he was required to register under SORNA.  Defendant notes that he was convicted in 1981, well before SORNA was enacted.

Lawmakers have wide latitude to declare an offense and to exclude elements of knowledge and diligence from its definition.  Lambert v. California, 355 U.S. 225, 228 (1957).  Ignorance of the law therefore ordinarily does not excuse criminal activity.  See id.  Due process, however, places

---

[12]     Even if defendant had standing to assert the non-delegation doctrine, the Court would follow the numerous courts which have held that Section 16913(d) sufficiently identifies the "intelligible principle governing the extent of authority delegated" to the Attorney General, and does not unlawfully cede to the Attorney General the core legislative function of defining federal crimes. United States v. Oakley, No. 07CR437, 2008 WL 2986256, at *13 (D. Neb. July 31, 2008); see Shenandoah, 2008 WL 3854454, at *13; Van Buren, 2008 WL 3414012, at *15; Senogles, 2008 WL 2971447, at *12;  Zuniga, 2008 WL 2184118, at *12-13; United States v. Utesch, No. 07-CR-105, 2008 WL 656066, at *10 (E.D. Tenn. March 6, 2008); United States v. Howell, No. CR07-2013-MWB, 2008 WL 313200, at *8 (N.D. Iowa Feb. 1, 2008); United States v. Samuels, 543 F. Supp.2d 669, 677-78 (E.D. Ky. Jan. 17, 2008); LeTourneau, 534 F. Supp.2d at 724-25.

some limit on this principle particularly where the conduct is wholly passive, such as a mere failure to register, and the individual is unaware of any wrongdoing.  See id.  In Lambert, a city ordinance made it unlawful for a felon "to be or remain in Los Angeles for more than five days without registering."  Id. at 226.  The Supreme Court held that consistent with due process principles, an individual could not be convicted under the ordinance where the person "did not know of the duty to register and where there was no proof of the probability of such knowledge."  Id. at 229.

The government has presented ample evidence of defendant's knowledge of his duty to register under SORNA to survive a motion to dismiss.  Defendant acknowledged his obligation to register as a sex offender under state law.  See Exhibits 1 and 4 to Government's Response (Doc. #22).  Such an acknowledgment demonstrated "proof of the probability" of his knowledge of a duty to register under federal law.  Lambert, 355 U.S. at 229; see May, 2008 WL 2917766, at *8 (8th Cir.) (due process rights not violated in SORNA prosecution because based on previously enacted state laws, defendant knew of obligation to register and keep registration current when moving between jurisdictions); Shenandoah, 2008 WL 3854454, at *7-8 (knowledge of state law registration requirement is proof of probability that defendant knew of duty under SORNA); Gould, 526 F. Supp.2d at 544-45 (defendant's understanding of registry process in Pennsylvania and West Virginia demonstrates that he was not passive participant who was unaware of illegality of failing to register).  A defendant can violate SORNA by failing to register or update a SORNA imposed registration obligation or a registration obligation imposed by another law.  Zuniga, 2008 WL 2184118, at *15; see Shenandoah, 2008 WL 3854454, at *8; see also United States v. David, No. 08CR11, 2008 WL 2045830, at *6-8 (W.D.N.C. Apr. 18, 2008) (violation of any registration statute also violation of SORNA).

In addition to state registration requirements, defendant had constructive notice that he was subject to future regulation under federal law based on the nature of his offense as a sex crime. Shenandoah, 2008 WL 3854454, at *9; Hinen, 487 F. Supp.2d at 754.  The United States District Court for the Western District of Virginia noted as follows:

> Few offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so.  Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected keep themselves abreast of changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation.  Sex offenders are no different; they must comply with the law even when it changes suddenly and without notice, and they are well advised to periodically check for changes because they are particularly subject to regulation.

United States v. Roberts, No. 07-CR-70031, 2007 WL 2155750, at *2 (W.D. Va. July 27, 2007) (internal citations omitted).  As a sex offender, a defendant could not reasonably expect to be free from regulation when he traveled to another jurisdiction.  See Shenandoah, 2008 WL 3854454, at *9; Hinen, 487 F. Supp.2d at 754.  Defendant's actual knowledge of his duty to register as a sex offender under state law and the nature of his offense as a sex crime is sufficient to satisfy due process under SORNA.  Shenandoah, 2008 WL 3854454, at *9; Zuniga, 2008 WL 2184118, at *15.

Defendant also argues that it was impossible for him to register under SORNA because no state has implemented SORNA's registration requirements.  SORNA requires a sex offender to inform the relevant jurisdiction or jurisdictions "of all changes in the information required for that offender in the sex offender registry."  42 U.S.C. § 16913(c).  A "sex offender registry" is defined as "a registry of sex offenders, and a notification program, maintained by a jurisdiction."  42 U.S.C. § 16911(9).  A state created registry which is maintained after the effective date of SORNA satisfies the statutory definition of a sex offender registry.  See Shenandoah, 2008 WL 3854454, at *6; Gagnon, 2008 WL 3523181, at *4; Senogles, 2008 WL 2971447, at *18.  While SORNA imposes

additional requirements upon states to improve their registry systems, these obligations are separate and distinct from those imposed upon sex offenders.  <u>Shenandoah</u>, 2008 WL 3854454, at *6; <u>see</u> 42 U.S.C. § 16913 (registry requirements for sex offenders), 42 U.S.C. § 16912 (registry requirements for states); <u>Waybright</u>, 561 F. Supp.2d at 1173 (registration possible under SORNA because Montana maintained sex offender registry both before and after SORNA enacted).  A state's failure to update its registration system to conform with SORNA does not alter a sex offender's independent duty to register under existing state law.  <u>See</u> <u>Shenandoah</u>, 2008 WL 3854454, at *6-7; <u>United States v. Robinson</u>, No. 08cr76, 2008 WL 3895597, at *2-3 (E.D. Va. Aug. 19, 2008); <u>Van Buren</u>, 2008 WL 3414012, at *6-7; <u>David</u>, 2008 WL 2045827, at *3-5 (actions of state not relevant to whether SORNA applies to defendant); <u>Ditomasso</u>, 552 F. Supp.2d at 238 (no mention in SORNA that registration obligation does not become effective until states implement additional registration requirements of statute); <u>Gould</u>, 526 F. Supp.2d at 542 (offender's registration under SORNA does not hinge on implementation by state).  A sex offender is required to register under SORNA even if no state has fully implemented the federal requirements.  <u>Shenandoah</u>, 2008 WL 3854454, at *6-7; <u>Van Buren</u>, 2008 WL 3414012, at *6-7; <u>Senogles</u>, 2008 WL 2971447, at *18; <u>Waybright</u>, 561 F. Supp.2d at 1173; <u>David</u>, 2008 WL 2045827, at *3-5; <u>Ditomasso</u>, 552 F. Supp.2d at 239; <u>United States v. Dixon</u>, No. 07-CR-72(01) RM, 2007 WL 4553720, at *4 (N.D. Ind. Dec. 18, 2007); <u>Gould</u>, 526 F. Supp.2d at 542; <u>United States v. Pitts</u>, No. 07-157-A, 2007 WL 3353423, at *7 (M.D. La. Nov. 7, 2007).  Because California, New York and Kansas have sex offender registries, it was not impossible for defendant to comply with the registration requirements under SORNA.  Absent evidence that defendant was prevented from utilizing the appropriate state registration program, <u>see</u> 18 U.S.C. § 2250(b) (setting forth the affirmative defense of the existence of uncontrollable circumstances that prevented proper SORNA registration), the Court overrules defendant's motion

based on the states' failure to fully implement SORNA requirements.

Defendant also argues that without notice of SORNA requirements, it was impossible for him to "knowingly" fail to register or update a registration as required by SORNA.  18 U.S.C. § 2250(a).  By inserting the word "knowingly" into 18 U.S.C. § 2250(a), Congress did not necessarily intend to create a specific intent crime.  See Shenandoah, 2008 WL 3854454, at *10; Ditomasso, 552 F. Supp.2d at 243-44.  If Congress had intended such a result, it could have made it a crime for a defendant to "knowingly fail to register or update a registration *with the intent to violate* SORNA." Shenandoah, 2008 WL 3854454, at *10; (quoting Ditomasso, 552 F. Supp.2d at 244) (emphasis in original); see United States v. Gonzales, No. 07cr27-RS, 2007 WL 2298004, at *3-6 (N.D. Fla. Aug. 9, 2007).   Notice of the particular statute is not an element of a criminal violation of Section 2250.  See Shenandoah, 2008 WL 3854454, at *10; Zuniga, 2008 WL 2184118, at *15; Samuels, 543 F. Supp.2d at 673-74; Dixon, 2007 WL 4553720, at *4 (defendant need not have been told by some official that he had to register pursuant to SORNA).  Here, the indictment alleges that defendant "knowingly" violated SORNA, which sufficiently addresses the intent element of Section 2250.  See Shenandoah, 2008 WL 3854454, at *10; Zuniga, 2008 WL 2184118, at *15; Gonzales, 2007 WL 2298004, at *3-6 (mens rea element of Section 2250 may be satisfied by proving that defendant knowingly failed to provide information which SORNA required).  On a motion to dismiss, the Court need not address whether defendant actually had the requisite knowledge for a SORNA violation.  See Shenandoah, 2008 WL 3854454, at *10; Zuniga, 2008 WL 2184118, at *15; Cardenas, 2007 WL 4245913, at *13-14; Gonzales, 2007 WL 2298004, at *3-6.

## VIII.   Tenth Amendment

Defendant argues that Section 2250 violates the Tenth Amendment because it forces state officials to enforce a federal regulatory scheme.  The Tenth Amendment provides that powers not

delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. U.S. Const., Amend. X. The Tenth Amendment prohibits the federal government from compelling the states to address particular problems or to implement, by legislation or executive action, federal regulatory programs. Printz v. United States, 521 U.S. 898, 925 (1997).

Private citizens do not have standing to assert Tenth Amendment claims when their interests are not aligned with the state's interests. United States v. Parker, 362 F.3d 1279, 1284 (10th Cir.), cert. denied, 543 U.S. 874 (2004). In any event, defendant has not shown any alleged injury from the enactment of SORNA. Defendant was already required to register as a sex offender under California, New York and Kansas law. By enacting SORNA, the federal government did not require defendant to do anything differently than he was already required to do under state law. Defendant therefore has not suffered injury as a result of the SORNA requirement that state officials enact sexual offender registries. See Shenandoah, 2008 WL 3854454, at *11; Gagnon, 2008 WL 3523181, at *5; Van Buren, 2008 WL 3414012, at *15; Waybright, 561 F. Supp.2d at 1168-69. Absent an injury from the alleged Tenth Amendment violation, defendant does not have standing to raise such a claim.

## IX.    Right To Travel

Defendant argues that as applied to him, SORNA infringes his constitutional right to travel. In particular, he claims that unregistered persons convicted of sex offenses who exercise their right to travel to another state are disadvantaged as compared to persons subject to the same registration requirements who are already residents of that state.

The right to travel is a fundamental right which is protected by the Privileges and Immunities Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. See

Saenz v. Roe, 526 U.S. 489, 500 (1999); Waybright, 561 F. Supp.2d at 1169.  The right to travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State."  Saenz, 526 U.S. at 500.  A statute which imposes an unreasonable burden on the right to travel is subject to strict scrutiny "unless shown to be necessary to promote a compelling governmental interest."  Id. at 499.  A reasonable burden or mere inconvenience on a person's ability to travel from state to state does not violate that individual's constitutional right to travel.  Id.

Analyzing a statute similar to SORNA, the Eleventh Circuit held that Florida's sex offender notification act did not infringe a sex offender's right to travel.  See Doe v. Moore, 410 F.3d 1337, 1349 (11th Cir. 2005).  The Eleventh Circuit stated as follows:

> [M]ere burdens on a person's ability to travel from state to state are not necessarily a violation of their right to travel.  See Saenz v. Roe, 526 U.S. 489, 499, 119 S. Ct. 1518, 1524, 143 L.Ed.2d 689 (1999) (noting a statute cannot "'unreasonably burden'" the right to travel).  In the predominant case law, the right to travel protects a person's right to enter and leave another state, the right to be treated fairly when temporarily present in another state, and the right to be treated the same as other citizens of that state when moving there permanently.  Id. at 500, 119 S. Ct. at 1525.
>
> Here, however, the Appellants do not argue that they were treated differently because they were a new or temporary resident to Florida or that they were not allowed to enter and leave another state.  Rather, they argue that it is inconvenient to travel from their permanent residence because the Sex Offender Act requires them to notify Florida law enforcement in person when they change permanent or temporary residences.  Though we recognize this requirement is burdensome, we do not hold it is unreasonable by constitutional standards, especially in light of the reasoning behind such registration.  The state has a strong interest in preventing future sexual offenses and alerting local law enforcement and citizens to the whereabouts of those that could reoffend.  Without such a requirement, sex offenders could legally subvert the purpose of the statute by temporarily traveling to other jurisdictions for long periods of time and committing sex offenses without having to notify law enforcement.  The state has drawn a line for temporary and permanent

relocation, and we hold this requirement does not unreasonably burden the Appellants' right to travel.

Id. at 1348-49 (footnote omitted).

SORNA does not unreasonably burden the right to travel of sex offenders. Instead, it requires sex offenders to notify law enforcement when they move from one state to another – a burden analogous to the burden of registering a vehicle when a vehicle owner moves from one state to another. Sex offenders and vehicle owners who move from state to state may have a somewhat higher burden than individuals who remain in one state, but this additional burden hardly rises to the level of an infringement on their constitutional right to travel. See Shenandoah, 2008 WL 3854454, at *12; Van Buren, 2008 WL 3414012, at *16-17; Senogles, 2008 WL 2971447, at *11; Oakley, 2008 WL 2986256, at *19-20; Waybright, 561 F. Supp.2d at 1170; see also Cardenas, 2007 WL 4245913, at *14 (interest in preventing future sexual offenses outweighs inconvenience or burden of requiring individual to register in new state); Pitts, 2007 WL 3353423, at *9 (compelling interest behind registration requirements sufficient to override burden placed on sex offenders who must register in new state); cf. Shapiro v. Thompson, 394 U.S. 618, 629 (1969) (constitutionally impermissible for state to enact durational residency requirements for purpose of inhibiting migration by needy person into state).

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss (Doc. #16) filed May 22, 2008 be and hereby is **OVERRULED**.

Dated this 23rd day of September, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge